# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL SHAUF, guardian of the person and estate of Daniel Lee Boling, II, an incapacitated adult,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-17-713-R** |
| | ) | |
| **HECTOR A. RIOS, JR., Warden, Lawton Correctional Facility, *et al.*,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court are Defendants Hector Rios, Laura Pitman, Greg Williams, Richard Wilson, and Carol Barrett's Motions to Dismiss, Docs. 15–18. Plaintiff's Second Amended Complaint brings an Eighth Amendment claim under 42 U.S.C. § 1983—on behalf of Daniel Boling, a Lawton Correctional Facility ("LCF") inmate allegedly beat into a coma by his cellmate Randy Mounce—against three LCF agents and two deputy directors of the Oklahoma Department of Corrections ("ODOC") in their individual capacity. *See* Doc. 3. Plaintiff states a plausible claim for relief with respect to Greg Williams, Richard Wilson, and Carol Barrett, and the Court dismisses the complaint against Laura Pitman and Hector Rios for the following reasons.

## I. Background

According to the complaint, Randy Mounce is a very violent inmate. He first entered ODOC custody in 1994, sentenced to life imprisonment without parole for stabbing

1

someone to death. *See* Doc. 3, at 3. Mounce committed various prison violations before arriving at LCF:

- August, 16, 1998: battery of another inmate

- October 12, 1998: battery of another person

- August 29, 2004: threatening bodily harm to another inmate

- September 18, 2009: stabbing of another inmate (Inmate "S")

- January 29, 2013: stabbing of another inmate (Inmate "N")

*Id.* at 4.

On December 19, 2014, ODOC transferred Mounce from a maximum-security prison to LCF, a private medium-security prison. *Id.* ODOC's "transfer packet" accompanying Mounce to LCF documented each of the incidents above except for the 2013 stabbing of Inmate "N." ODOC was aware of the stabbing, as Internal Affairs Investigators reported findings to ODOC supervisors. *Id.* LCF housed Mounce in the segregation unit for his first two weeks due to lack of bed availability. *Id.* at 5. On December 31, 2014, despite his violent history and his positive test for methamphetamine upon arrival, Mounce was classified as "medium security" and released to general population. *Id.*

Mounce's misconduct continued while at LCF:

- December, 2014: positive test for methamphetamine

- April 22, 2015: battery of another inmate

- May 27, 2015: threatening bodily harm to another inmate (his cellmate)

- June 4, 2015: possession of methamphetamine

*Id.* at 4–5. Then on July 3, 2015, a dispute arose between Mounce and Daniel Boling, his new cellmate after Mounce's May 27, 2015, threats to his old cellmate prompted a cell change. *Id.* at 5. Mounce beat Boling until Boling lapsed into a coma—he remains unconscious and will likely spend the rest of his life that way. *Id.* at 7.

Plaintiff filed this Section 1983 action on June 30, 2017, against Hector Rios and Carol Barrett, and he amended it on August 24 to add Richard Wilson, Laura Pitman, and Greg Williams. *See* Docs. 1 and 3. Defendant Rios is the Warden of LCF. He is allegedly responsible for oversight of all operations, including classification, discipline, and staff training. *See* Doc. 3, at 7. Defendant Barrett is an LCF case manager. *Id.* at 5. Plaintiff alleges that in filling out Mounce's Custody Assessment Scale form, she "recklessly omitted several relevant facts" and classified him as "medium security." *Id.* Defendant Wilson is an LCF Unit Manager over Mounce and Boling's unit at the time of Mounce's alleged attack. *Id.* at 2. He is "responsible for oversight of the unit record keeping system to ensure that detailed information about each offender housed in [his] unit is maintained by . . . staff." *Id.* at 8. Wilson also "directed that Boling be housed with" Mounce. *Id.* at 5. Defendant Pitman is Deputy Director/Administrator of Classification and Population for ODOC. Plaintiff alleges that she "knew or should have known of the long, violent history of Mounce toward other inmates," but took no action to protect Boling from this risk. *Id.* at 6. Lastly, Defendant Williams is ODOC's Deputy Director of Private Prison Administration. *Id.* at 3. He approved Mounce's transfer to LCF and signed a form that disregarded the 2013 Inmate "N" stabbing; it read, "Offender has minimum points. He has no active misconducts. Offender[']s last misconduct was on 6[]/30/2010." *Id.* at 10.

## II.    Discussion

A complaint may be dismissed upon a motion for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal is proper "if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" *MacArthur v. San Juan County,* 497 F.3d 1057, 1064 (10th Cir. 2007) (quoting *Twombly,* 550 U.S. at 547); *see Iqbal,* 556 U.S. at 676–80. The plaintiff cannot merely give "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Such conclusory allegations are not entitled to the court's presumption for the plaintiff. Instead, the plaintiff must plead facts that at least makes the claims plausible and raise the "right of relief above the speculative level." *Id.* at 558.

Plaintiff brings an Eighth Amendment claim pursuant to 42 U.S.C. § 1983, which protects against violations of "right[s] secured by the Constitution and laws of the United States . . . committed . . . under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Phillips v. Tiona*, 508 Fed. App'x 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by inmates . . . ."). "In its prohibition of 'cruel and unusual punishments,' the

Eighth Amendment places restraints on prison officials, who . . . must provide humane conditions of confinement; [they] must . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). Prison officials must also "protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Id.* (quoting *Hudson*, 468 U.S. at 526).

To allege a plausible Eighth Amendment failure-to-protect claim, Plaintiff must satisfy three elements: (1) objective harm, (2) a culpable state of mind, and (3) an "affirmative link" between a prison official's conduct and the constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

First, the constitutional deprivation must be "sufficiently serious"—Plaintiff must plead facts establishing that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). How substantial a risk must be to survive a 12(b)(6) motion is unclear. *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996). After all, "[p]risons are necessarily dangerous places." *Farmer*, 511 U.S. at 858 (Thomas, J., concurring). Officials face the "unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 845 (quoting *Spain v. Procunier*, 600 F.2d 189, 193 (9th Cir. 1979)). Nonetheless, the

Eighth Amendment does not require a direct and imminent threat to a particular inmate. Courts find substantial risk of harm "even when the potential and ultimate victims ha[ve] been wholly oblivious to the impending threat, particularly in cases of improper cell assignments." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005).

The second requirement is subjective and requires an official's "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302–03). This standard is equivalent to recklessness, or knowingly disregarding a risk. *Id.* at 836–37. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Third, Plaintiff must allege an "affirmative link" between the official's conduct and the constitutional violation, embodied by "personal involvement" and "causation." *Schneider*, 717 F.3d at 767. This requirement applies to supervisory defendants as well because even though "direct participation" is unnecessary, liability must "be predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676). Section 1983 "does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). The "affirmative link between the supervisor and the constitutional violation" requires "more than 'a supervisor's mere knowledge of his subordinate's' conduct." *Schneider*, 717 F.3d at 767 (quoting *Iqbal*, 556 U.S. at 677).

## A. Hector Rios

Plaintiff does not plead a plausible Eighth Amendment claim against Defendant Rios, the LCF Warden. Incorporating the factual allegations above regarding Mounce's misconduct history, the Complaint alleges the following against Rios:

35. Defendant Rios was responsible for all operations of the LCF, including oversight of Unit Management and staff. This oversight would include approving classification recommendation and ensuring that properly classified offenders were housed at this facility and properly classified inmates were transferred to other appropriate facilities. Defendant Rios knew or should have known about the misconduct of Inmate Mounce to include violent misconduct or the threat of violent conduct. Defendant Rios would have known or should have known about the positive results for the drug screening test on the day of Inmate Mounce's arrival to the LCF. This should have prompted Defendant Rios to seek an immediate transfer for Inmate Mounce to return to maximum security. The willful or reckless failure to perform the foregoing duties and responsibilities constituted deliberate indifference to safety and well being of Boling.

. . . .

37. Defendant Rios . . . caused or failed to prevent Mounce, who is serving a life sentence, from being placed in a cell with a young man who was soon to be released, Boling, despite Mounce's demonstrated violent history toward other inmates, specifically after Mounce threatened his then cell mate on May 27, 2015.

. . . .

43. All Defendants named herein, and others, were subjectively aware the Mounce posed a substantial risk to Boling and failed to take steps to prevent or mitigate such harm.

44. All Defendants were deliberately indifferent when they celled Mounce, a significant, demonstrated risk, with Boling, especially after being aware of the threats Inmate Mounce had made toward his cell mate on or before May 27, 2015.

45. Defendants Rios, Doe II, Richard Wilson, Doe III and Doe IV failed to adequately train, direct, supervise, and/or control the actions of its employees

at LCF so as to prevent violation of Boling's constitutional rights, and the rights of others similarly situated.

46. Boling's constitutional rights were violated as a direct and proximate result of the Defendants' deliberate indifference.

Doc. 3, at 7–8, 11.

Plaintiff satisfies the objective requirement and pleads that Boling was "incarcerated under conditions posing substantial risk of serious harm." *Farmer*, 511 U.S. at 834. LCF housed Boling with Mounce, an inmate convicted of murder with a violent history of misconduct toward other inmates, including multiple stabbings and threats. *See* Doc. 3, at 4–5. At the time LCF housed the two together, Mounce had also just threatened his prior cellmate. *Id.* at 5. Granted, this risk to Boling was only present by virtue of sharing a cell with Mounce; Plaintiff has not pled that Mounce specifically threatened Boling or caused him prior harm. Nonetheless, such allegations are merely sufficient, and not necessary, to satisfy the Eighth Amendment's objective requirement. *See Farmer,* 511 U.S. at 843 ("[I]t does not matter whether . . . a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004); *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003); *Grimsley*, 93 F.3d at 681; *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) ("[T]he complaint alleges that employees of the prison system, knowing that Crabtree had a history of raping his cellmates and was HIV-positive, nevertheless placed Billman in the same cell without warning him of the danger he faced."). Thus, viewing the facts in Plaintiff's failure, Boling faced an objectively substantial risk of serious harm.

Plaintiff's claim against Defendant Rios falls short, however, in meeting the remaining Section 1983 requirements. At first glance, Plaintiff employs many of the right state-of-mind buzzwords in his complaint—"Defendant Rios knew or should have known about [Mounce's] misconduct . . . ."; he "would have known or should have known about the positive [methamphetamine] results . . . ."; and his "willful or reckless failure to perform the foregoing duties and responsibilities constituted deliberate indifference." Doc. 3, at 7–8, 11. Further, at the motion-to-dismiss stage before discovery, an injured prisoner is in a difficult position to allege facts to support officials' deliberately indifferent state of mind and the affirmative link that caused harm. Other courts cite this quandary to justify broadly construing prisoner pleadings. *See Budz*, 398 F.3d at 914 (7th Cir. 2005) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed.") (quoting *Tankersley v. Albright*, 514 F.2d 956, 964 n.16 (7th Cir. 1975)).

However, the task is a reasonable one, to raise the "right of relief above the speculative level." *Twombly*, 550 U.S. at 558. The Court is sensitive not to overstep the bounds of *Twombly* and *Iqbal*. "[S]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is *and* the grounds upon which it rests." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (emphasis added). The Court must peel back the "labels and conclusions" and "formulaic recitation of the elements" of an Eighth Amendment claim to decide if there are "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 547, 555. In other words, to warrant *Twombly*'s presumption of truth,

Plaintiff must accompany his conclusory phrase "knew or should have known" with facts—be they circumstantial or direct, *see Tafoya v. Salazar*, 516 F.3d 912, 916–17 (10th Cir. 2008)—that make deliberate indifference "plausible." *Twombly,* 550 U.S. at 547; *see Keith v. Koerner*, 707 F.3d 1185, 1188–89 (10th Cir. 2013) (dismissing an insufficient argument that because a prison supervisor had certain responsibilities, "he must have been aware of [the aggressor's] criminal intent and did nothing to prevent it"); *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) ("[B]y alleging Appellants 'knew or should have known' of a risk, Franklin has merely recited an element of a claim without providing the facts from which one could draw such a conclusion.").

Upon a closer look, Plaintiff's allegations regarding Defendant Rios's deliberate indifference and personal involvement merely disguise an impermissible respondeat superior claim. Rios is responsible for oversight of all LCF operations, including classification, discipline, and staff training. *See* Doc. 3, at 7. Thus, Plaintiff's argument proceeds, he "must have been aware" of his inferiors' conduct in housing a dangerous inmate Mounce with Boling "and [he] did nothing to prevent it." *Keith*, 707 F.3d at 1188–89. "[T]hat alone [is] insufficient to withstand a motion to dismiss." *Id.* at 1189; *see also Schneider*, 717 F.3d at 767. Plaintiff does not allege that Defendant Rios personally caused the harm to Boling, either by ordering an official's conduct or developing a policy that he knew was likely to cause such harm. Nor do Plaintiff's allegations against Rios show an official who has "been exposed to information concerning the risk" based on "longstanding, pervasive, [or] well-documented" evidence. *Farmer*, 511 U.S. at 842–43.

Instead, Plaintiff's complaint is littered with "should have" assumptions and

conclusory allegations based solely on Rios's supervisory position as LCF Warden. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Therefore, with respect to Defendant Rios, Plaintiff failed to "nudge[] [his] claim[] across the line from conceivable to plausible.'" *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## B. Laura Pitman

Plaintiff's claim against Defendant Pitman suffers from similar shortcomings. Pitman is Deputy Director/Administrator of Classification and Population for ODOC. Plaintiff alleges that she "knew or should have known of the long, violent history of Mounce toward other inmates," but took no action to protect Boling from this risk. Doc. 3, at 6. Her responsibility is oversight over "the classification system and the proper management of offenders to ensure the safety of the community, staff, visitors, and inmates." *Id.* at 10. Pitman's alleged knowledge of Mounce's violent background "should have prompted Defendant Pitman to pursue a Special Management status for Inmate Mounce."[1] *Id.* Lastly, Pitman "failed to adequately train, direct, supervise, and/or control

---

[1] Plaintiff also objects to Boling's presence at LCF at the time of the beating despite his eligibility for minimum-security status. Doc. 3, at 6, 10. The Court's focus is the relevant risk to Boling, not whether ODOC could have housed him in a different prison. Thus, unless Plaintiff can allege that a defendant who was aware of Boling's minimum-security eligibility was also aware of, and personally responsible for, Boling's cell assignment with Mounce—all with the conscious awareness that Mounce posed a substantial risk of harm—Boling's security status is immaterial. Plaintiff's "knew of or should have known" allegations against Pitman in this regard are insufficient and conclusory because they lack facts to raise the "right of relief above the speculative level." *Twombly*, 550 U.S. at 558; *see* Doc. 3, at 6, 10; *supra*, Part II(a), at 9–11.

the actions of . . . employees at DOC so as to prevent violation of Boling's constitutional rights, and the rights of others similarly situated." *Id.* at 11.

Again, searching for facts that make Plaintiff's claim against Defendant Pitman plausible, the Court is left with mere supervisory and vague allegations. A failure-to-train claim only suffices under Section 1983 if Plaintiff can plead an affirmative link. In other words, is the substantial risk of harm to Boling "predicated on a violation traceable to [Pitman's] 'own individual actions'"? *Pahls*, 718 F.3d at 1225 (quoting *Iqbal*, 556 U.S. at 676). Plaintiff alleges a failure to act based on Pitman's status as a supervisor, without facts making it plausible that she was personally involved with Mounce's classification.

Further, without the conclusory "knew or should have known" language regarding Pitman's deliberate indifference, only Plaintiff's generalized allegation against "DOC" remains. Doc. 3, at 6. He alleges that "DOC was aware of the January, 2013 stabbing incident" regarding inmate "N," but withheld that information from Mounce's transfer packet. *Id.* at 4. This undifferentiated allegation against "DOC" does not establish deliberate indifference. *See Pahls*, 718 F.3d at 1225 ("'[I]t is particularly important' that plaintiffs 'make clear exactly who is alleged to have done what to whom, . . . as distinguished from collective allegations.' . . . Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights.'") (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, Plaintiff also fails to plead a plausible Eighth Amendment claim against Defendant Pitman.

## C. Greg Williams

Regarding Defendant Greg Williams, ODOC's Deputy Director of Private Prison Administration, Plaintiff pleads the same allegations as those against Pitman, save for one material addition. *See* Doc. 3, at 6–7, 10–11.

> Defendant Williams approved the transfer of Mounce from Maximum Security to LCF (medium) and signed a form that read "Offender has minimum points. He has no active misconducts. Offender[']s last misconduct was on 06/[]30/2010." This was despite the documented stabbing of inmate "N" on January 29, 2013.

*Id.* at 10–11.

Williams allegedly signed this transfer form and withheld a documented instance of highly relevant misconduct, Mounce's stabbing of another inmate less than two years prior. This suggests he was aware of Mounce's misconduct history—which evinced a substantial risk of harm to LCF inmates—and ignored it in approving Mounce's transfer. Further, Williams's approval personally contributed to Boling's risky incarceration conditions.[2] Williams may not have known that Mounce would be a danger to Boling in particular, but Mounce's violent history put Williams on notice that Mounce "posed a risk to a large class of inmates," especially Mounce's eventual cellmates. *Greene*, 361 F.3d at 294. Thus, Plaintiff pleads a plausible Eighth Amendment violation by meeting both the objective and

---

[2] Plaintiff does not clarify what, based on the ODOC's prisoner classification system, warrants more than "minimum points" or qualifies as "active" misconduct. Doc. 3, at 10. Therefore, the Court cannot determine if Williams's statement in these respects is false and thereby material to Williams's alleged deliberate indifference or personal involvement. Nonetheless, Plaintiff plausibly pleads that Defendant Williams investigated Mounce's prison record—which even without the inmate "N" stabbing may have posed a substantial risk of harm—and approved his transfer to a medium-security prison.

subjective requirements and establishing an "affirmative link" between Defendant Williams's conduct and the constitutional violation. *Schneider*, 717 F.3d at 767.

The Court's inquiry does not stop here. Williams, a state official acting in his official capacity at the time of the alleged conduct, asserts qualified immunity. "[C]ourts should resolve the 'purely legal question' . . . raised by a qualified immunity defense 'at the earliest possible stage in litigation.'" *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995)). To overcome this immunity, Plaintiff "must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010) (internal quotations omitted). Plaintiff has already satisfied the first prong, which leaves the "clearly established" prong. "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009). "[T]he contours of the right must be sufficiently clear such that an objectively reasonable officer would understand that what she is doing violates that right." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1247 (10th Cir. 2003) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)).

In asserting that Williams's alleged Eighth Amendment violation was clearly established, Plaintiff relies on the general rights outlined in *Farmer* to protection "from violence at the hands of other prisoners" and from incarceration "under conditions posing

14

substantial risk of serious harm." *Farmer*, 511 U.S. at 833–34. Beyond that, Plaintiff claims, officials' liability for failure to protect prisoners is "obvious[.]" Doc. 22, at 12.

> [W]here an inmate has a history of prison violence, clearly established over a lengthy period of time, there is no cause to doubt that further violence will ensue. Placing an inmate like Mounce with an inmate like Boling was throwing raw bloody meat to a wolf. The result was certain. There was no room for disagreement that such conduct violated the Eighth Amendment's duty to protect.

*Id.*

The Court is hesitant to adopt Plaintiff's broad, *ipse dixit* interpretation of clearly established law. First, the proposition distorts the law. To establish a substantial risk of serious harm under the Eighth Amendment, Plaintiff does not need to allege "that further violence *will* ensue." *Id.* The Supreme Court's *Farmer* opinion discussed *risk* of harm. 511 U.S. at 834. The harm must also be "serious," and not all violence is serious enough to implicate the Eighth Amendment. *Id.* Then, even if that risk is present, Defendant must have known that the risk was substantial and deliberately ignored it. *Id.* at 837.

Second—and more troubling to the "clearly established" prong—the *Farmer* court specifically noted that "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes is a question this case does not present," and the court "d[id] not address it." *Id.* at 834. n.3. Thus, Plaintiff cannot rely solely on *Farmer* to show "that an objectively reasonable officer would understand that what []he is doing violates that right."[3] *Roska*, 328 F.3d at 1247; *see Grimsley*, 93 F.3d at 681 (10th Cir. 1996)

---

[3] Speaking to the deliberate indifference requirement, the *Farmer* court discussed that "it does not matter whether . . . a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." 511 U.S. at 843. This statement is broad dicta such that it does not make "the unlawfulness [of Williams's conduct] apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

("There exists no precise definition of those types of conditions of confinement that violate the first prong of the *Farmer* test by 'posing a substantial risk of serious harm.'") (quoting *Farmer*, 511 U.S. at 834). He needs a more specific case, one in which an officer was confronted with similar circumstances. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *But see id.* ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful."). The case must alert officials in Defendant Williams's position that misrepresenting relevant misconduct history or approving a violent inmate's transfer can pose a substantial risk to other inmates sufficient to implicate the Eighth Amendment.[4]

With the Tenth Circuit silent on this issue, the Court finds that "the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Harman*, 586 F.3d at 1261. In *Pierson v. Hartley*, 391 F.3d 898 (7th Cir. 2004), an injured plaintiff prisoner appealed the district court's judgment as a matter of law for defendants based on insufficient evidence. *Id.* at 901. The defendants were a prison unit team manager and a casework manager who placed an inmate with a "history of violent

_____

Further, it does not rebut the court's explicit caveat that the question of what constitutes substantial harm remains unsettled.

[4] Defendant Williams, meanwhile, attempts to frame Plaintiff's argument as seeking a "clearly established right to a particular custody level or place of incarceration." Doc. 15, at 13. That cannot be right. Plaintiff only pleads facts concerning where Boling was housed to show that Defendants, by housing Boling with Mounce, ignored a substantial risk of serious harm. In other words, the constitutional violation is not the housing assignment by itself, nor is it the attack that put Boling in a coma. The relevant constitutional injury is "incarcerat[ion] under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

[prison] conduct" in the unrestricted "E" dormitory. *Id.* Before the defendants approved the dangerous inmate Wilkinson's placement in "E," the sheriff at Wilkinson's prior jail transferred him to the defendants' prison with a warning letter describing him as an "ESCAPE AND ASSAULT RISK." *Id.* at 901. The defendants—aware of the warning letter, Wilkinson's prison misconduct history, and his violent convictions—placed him in an unrestricted dormitory otherwise reserved for low-risk inmates. *Id.* at 900–01, 903. The Seventh Circuit found this evidence sufficient for the jury "to find that [the defendants] knew that Wilkinson posed a substantial risk to the other inmates." *Id.* at 903. It concluded:

> Whether the defendants knew that Wilkinson posed a specific risk to Pierson—rather than all the members of "E" dorm—is unimportant; for in order to establish a constitutional violation, it does not matter "whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk."

> The jury could have also found that [the defendants], knowing that Wilkinson posed a substantial risk of harm, disregarded that risk, first by assigning Wilkinson to the dorm and then by allowing him to remain following his weapons conviction. . . . Such inaction in the face of a substantial risk is sufficient to demonstrate deliberate indifference under the Eighth Amendment.

*Id.* at 903 (quoting *Haley v. Gross*, 86 F.3d 630, 643 n.33 (7th Cir. 1996)). *Pierson* warns officials in Defendant Williams's position that approving a violent inmate's placement can pose a substantial risk to other inmates sufficient to implicate the Eighth Amendment

Further, *Greene v. Bowles*, 361 F.3d 290 (6th Cir. 2004), was an appeal from the district court's summary judgment grant for a defendant prison warden; the court concluded that an injured plaintiff prisoner presented sufficient evidence to show that a "predatory inmate['s]" presence in the protective custody unit ("PCU") without

segregation "presented a substantial risk to other inmates in the PCU, of which Warden Brigano was aware." *Id.* at 292, 294. Specifically, the plaintiff showed:

> Frezzell's lengthy prison misconduct record, including Frezzell's two convictions for felonious assault arising out of the Lucasville prison riot; Warden Brigano's admission of Frezzell's status as a predatory inmate; Warden Brigano's concessions that Frezzell had "a long institutional history of being a disruptive, violent inmate," J.A. at 409; and the fact that Frezzell was a maximum-security inmate.

*Id.* at 294–95. The Court reasoned, "Our cases following *Farmer* demonstrate that . . . where a specific individual poses a risk to a large class of inmates, that risk can also support a finding of liability even where the particular prisoner at risk is not known in advance." *Id.* at 294. Granted, the warden in *Greene* did not approve the violent inmate's transfer to the victim's prison unit. However, the case alerts officials in Defendant Williams's position that exposing inmates to a "predatory" inmate—be it by ignoring relevant misconduct of an inmate already in one's prison or by approving a transfer—could implicate the Eighth Amendment.

Another case presents a converse, but equally relevant, situation. *See Solis v. Cty. of Los Angeles*, 514 F.3d 946, 957 (9th Cir. 2008). Solis, a plaintiff prisoner, was particularly vulnerable to attack from gang members due to his status as a former gang member. *Id.* The defendant prison official was aware of this heightened risk and nevertheless "transfer[red] [him] to the gang module," which "foreseeably result[ed] in Solis being attacked." *Id.* The Ninth Circuit concluded that a reasonable jury with these facts could have found an Eighth Amendment violation for deliberate indifference to a "substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). The Court sees

little material difference between an official like Defendant Williams who allegedly transferred a violent inmate to a medium-security prison and the one in *Solis* who transferred an at-risk inmate to a violent unit.

The Court is also persuaded by precedent holding prison officials liable under the Eighth Amendment in a similar context for directly celling a dangerous inmate with a potential victim. *See, e.g., Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1321 (11th Cir. 2016); *Calderon-Ortiz v. LaBoy-Alvarado*, 300 F.3d 60, 65 (1st Cir. 2002); *Billman*, 56 F.3d at 788 (7th Cir. 1995); *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1448–49 (9th Cir. 1991), *abrogated on other grounds by Farmer*, 511 U.S. 825. The Seventh Circuit aptly framed the issue:

> If [officials] place a prisoner in a cell that has a cobra, but they do not know that there is a cobra there (or even that there is a high probability that there is a cobra there), they are not guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent—even grossly negligent or even reckless in the tort sense—in failing to know. *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982). But if they know that there is a cobra there or at least that there is a high probability of a cobra there, and do nothing, that is deliberate indifference.

*Billman*, 56 F.3d at 788. Why is this case any different? Defendant Williams allegedly approved a cobra's transfer into a medium-security prison where he was sure to be celled with potential victims. He may not have directly placed Mounce with Boling, but Section 1983 does not require direct involvement. *See Dodds*, 614 F.3d at 1195 ("Personal involvement does not require direct participation because § 1983 states any official who 'causes' a citizen to be deprived of her constitutional rights can also be held liable.") (quotations and alteration omitted). Thus, the Court is satisfied "that an objectively

reasonable officer [in Defendant Williams's position] would understand that" he was subjecting inmates to a substantial risk of serious harm under the Eighth Amendment. *Roska*, 328 F.3d at 1247; *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (The relevant question regarding "clearly established" law is "fair warning" to state officials, not whether the previous cases are "fundamentally similar" or possess "materially similar facts.") (quoting *United States v. Lanier*, 520 U.S. 259 (1997)).

With regard to Williams's alleged deliberate indifference, Plaintiff also defeats qualified immunity. Plaintiff plausibly alleges that Williams was aware of, and misrepresented, Mounce's misconduct history by omitting one of his documented pre-LCF stabbings. Further, Williams must have known that upon transfer to a medium-security prison, Mounce would likely be exposed to other inmates. "Regardless of how prison officials become subjectively aware of a substantial risk of serious harm to an inmate—and indeed, even in situations where the prisoner himself remains oblivious to the potential harm—the Eighth Amendment requires them to respond reasonably." *Howard v. Waide*, 534 F.3d 1227, 1237 (10th Cir. 2008); *see also Tafoya*, 516 F.3d at 916 (10th Cir. 2008). Defendant Williams was plausibly "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . also dr[e]w the inference." *Farmer*, 550 U.S. at 837.

Lastly, unlike Plaintiff's allegations against Defendants Rios and Pitman, his Eighth Amendment claim against Williams is "predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Pahls*, 718 F.3d at 1225 (quoting *Iqbal*, 556 U.S. at 676). There is a plausible affirmative link between Williams's transfer approval and

Mounce's housing assignment that exposed Boling to his substantial risk of serious harm. Thus, the court rejects Defendant Williams's assertion of qualified immunity.

## D. Richard Wilson

Defendant Richard Wilson first moves to dismiss Plaintiff's Eighth Amendment claim on statute of limitations grounds. Oklahoma has a two-year statute of limitations for Section 1983 claims. *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) (citing *Abbitt v. Franklin*, 731 F.2d 661, 663 (10th Cir.1984) (en banc)). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (quoting *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir.1993)). Defendant Wilson allegedly exposed Boling to an unconstitutional risk of harm from May 27, 2015, until July 3, 2015, when Mounce beat Boling into a coma and Plaintiff's claim accrued. *See* Doc. 3, at 7. Plaintiff first named Defendant Wilson in his amended complaint on August 23, 2017, after attempting to employ "John Doe" defendants as place-holders in the initial complaint. *See* Docs. 1 and 3. By that point, over a month past the July 3, 2017, expiration of the statute of limitations, Plaintiff's claim against Wilson was time-barred unless his amended complaint relates back to the original pleading or a tolling exception applies.

Plaintiff concedes that his amended complaint does not relate back because "a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party' within the meaning of [Federal Rule of Civil

Procedure 15(c)(1)(C)(ii)]."[5] *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *see* Doc. 19, at 7. However, Plaintiff argues that three exceptions to the statute of limitations apply: equitable tolling, the discovery rule, and Oklahoma's "legal disability" exception. 12 Okla. Stat. § 96.

Without ruling on the first two potential exceptions, the Court finds that Plaintiff's legal disability tolls his claim against Defendant Wilson and others responsible for his alleged constitutional injury until "one (1) year after such [legal] disability shall be removed." *Id.* The Tenth Circuit recognized this "exception[] to [the statute of limitations] where foreseeable obstacles prevent the prompt filing of complaints and where considerations of fundamental fairness demand the preservation of causes of action." *Freeman v. Alex Brown & Sons, Inc.*, 73 F.3d 279, 281 (10th Cir. 1996).

Considering the broad "plain meaning of the words used by the legislature in light of subsequent analysis offered by the [Oklahoma] appellate courts," the concept of "legal disability" under Section 96 covers much more than just minors, as Defendant Wilson incredulously suggests. *Id.* at 282; *see* Doc. 25, at 5. It protects, among others, plaintiffs who "suffer[] debilitating physical injuries" that "render[] [them] unable to communicate with others, comprehend [their] surroundings, or make decisions on [their] own behalf." *Freeman*, 73 F.3d at 280; *see also Autry, et al. v. Cleveland County Sheriff's Dep't, et al.*, No. CIV-15-1167-D, 2018 WL 719044, at *6 (W.D. Okla. Feb. 5, 2018) ("The Court finds these allegations [that Mr. Autry 'was found unconscious in his cell' and 'returned to the

---

[5] Rule 15's numbering was amended since the Tenth Circuit's *Garrett* decision, but this amendment did not impact the relevant rules for relation back.

hospital in a coma'] . . . sufficient to state a potential basis for tolling the limitations period for Mr. Autry's § 1983 claim, subject to later proof."). This is precisely what Plaintiff alleges—that Boling remains in a coma and unable to communicate or care for himself. *See* Doc. 3, at 7. Thus, Plaintiff states a plausible case for tolling the applicable statute of limitations on the basis of his legal disability.

Second, Defendant Wilson argues that Plaintiff fails to state a plausible claim for relief. Wilson is an LCF Unit Manager who oversaw Mounce and Boling's unit during the alleged attack. *Id.* at 2. After Mounce's case manager investigated him for threatening his cellmate on May 27, 2015, Wilson "recklessly failed to house Mounce alone in a Segregation Unit, and directed that Boling be housed with him." *Id.* at 5. He was "responsible for oversight of the unit record keeping system to ensure that detailed information about each offender housed in [his] unit is maintained by . . . staff." *Id.* at 8. Plaintiff also alleges that Wilson was personally responsible to "be aware of the history of Mounce" and he "knew or should have known about Mounce's violent conduct. Defendant Richard Wilson had the responsibility to ensure that Mounce was not classified for medium security."[6] *Id.* at 8–9. Lastly, Wilson "failed to adequately train, direct, supervise, and/or control the actions of . . . employees at LCF so as to prevent violation of Boling's constitutional rights, and the rights of others similarly situated." *Id.* at 11.

---

[6] The Court disregards Plaintiff's repeated conclusory allegation, "The willful or reckless failure to perform the foregoing duties and responsibilities constituted deliberate indifference to the safety and well being of Boling." Doc. 3, at 7–11. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. Pro. 8(a)(2)).

Again, Plaintiff has plausibly alleged substantial risk of serious harm. *See supra*, Part II(A), at 8. Moving to the remaining Eighth Amendment elements, the Court rejects Plaintiff's conclusory failure-to-train allegation. Nonetheless, he alleges other facts that establish Defendant Wilson's deliberate indifference and personal involvement. Unlike Warden Rios, Wilson had more than a general supervisory responsibility over LCF officials. He had direct oversight of the record keeping system and assignments in Mounce and Boling's unit, and he "directed that Boling be housed with Mounce." Doc. 3, at 5. Therefore, it was plausible that Wilson was aware of Mounce's extensive misconduct history; in Mounce's six months at LCF before Wilson celled him with Boling, his record included a positive methamphetamine test, battery of another inmate, and a threat against his prior cellmate. *See id.* at 4–5. Wilson also allegedly became Mounce's Unit Manager as a result of his threats to his prior cellmate, making it likely that Wilson knew of Mounce's danger. Despite awareness of this substantial risk of serious harm to the inmates in Wilson's unit, he "failed to house Mounce alone in a Segregation Unit" and exposed Boling to the risk that ultimately incapacitated him. Thus, Plaintiff's claim against Defendant Wilson pleads a plausible claim for relief under the Eighth Amendment.

**E. Carol Barrett**

Lastly, Plaintiff states a plausible claim against Defendant Barrett, the LCF case manager that conducted Mounce's "Custody Assessment Scale form" recommending medium-security. Doc. 3, at 2. In doing so on January 9, 2015, Barrett "recklessly omitted several relevant facts" on the form that "would have increased" Mounce's security level. *Id.* at 5. Plaintiff also pleads the following against Barrett:

> [She] recklessly failed to properly screen and document the misconduct of Inmate Mounce to include violent misconduct or the threat of violent conduct, and to recommend maximum security or isolation for Mounce. . . . Carol Barrett . . . knew or should have known about the positive results for the drug screening test on the day of Inmate Mounce's arrival to the LCF. This should have prompted Defendants to seek an immediate transfer for Inmate Mounce to return to maximum security.

*Id.* at 8.

The link between Barrett's alleged conduct and the harm to Boling is clear, given that Barrett's security recommendation allegedly caused LCF to cell Mounce in the general population. Yet, the parties dispute whether Plaintiff's allegations amount to recklessness or mere negligence. To assess Barrett's state of mind, the Court must view the information in Barrett's possession at the time she recommended medium-security to determine if she deliberately ignored a substantial risk. To that end, Plaintiff's complaint is rather vague; other than the positive drug test, it is unclear what facts she "recklessly omitted" from the form. *Id.* at 5. However, viewing the allegations in the light most favorable to Plaintiff, the Court finds that Barrett's alleged failure to "document the misconduct of Inmate Mounce to include violent misconduct or the threat of violent conduct" establishes that she was aware of Mounce's violent history and deliberately ignored it. *Id.* at 8; *see Lane*, 495 F.3d at 1186 (quoting *Erickson*, 551 U.S. at 93) ("[S]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is *and* the grounds upon which it rests."). Thus, with regard to Defendant Barrett, Plaintiff sufficiently "nudges [his] claim[] across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

### III.    Conclusion

"Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Plaintiff plausibly alleges that Defendants Williams, Wilson, and Barrett knowingly "disregard[ed] an excessive risk" to Boling's safety, and the Court rejects Williams's qualified immunity defense. *Id.* at 837. Moreover, Plaintiff fails to state a plausible Eighth Amendment claim against Defendants Rios and Pitman. Accordingly, Defendants Williams and Pitman's Motion to Dismiss, Doc. 15, is GRANTED in part with respect to Pitman and DENIED with respect to Williams. Defendant Rios's Motion to Dismiss, Doc. 18, is GRANTED. Defendants Wilson and Barrett's Motions to Dismiss, Docs. 16 and 17, are DENIED.

IT IS SO ORDERED this 2nd day of March, 2018.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE